UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>BRENDAN LEE MANZON,<br><br>                Defendant. | Case No. 1:22-cr-00102-DCN<br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

Before the Court is the issue of whether Defendant Brendan Lee Manzon's prior Idaho conviction for aggravated battery constitutes a "crime of violence" under United States Sentencing Guideline ("U.S.S.G.") § 4B1.2(a)(1) for purposes of sentencing in this case. If Manzon's prior conviction is a crime of violence, he is ineligible for safety-valve relief, even under *United States v. Lopez*, 998 F.3d 431, 440 (9th Cir. 2021), because he has sixteen criminal history points, multiple prior three-point offenses, and his conviction for aggravated battery qualifies as a prior two-point violent offense.[1]

---

[1] To be safety valve eligible, a defendant must prove he does not have the following: (1) more than four criminal history points; (2) a prior three-point offense; and (3) a prior two-point violent offense. 18 U.S.C. § 3553(f)(1). In *Lopez*, the Ninth Circuit held a criminal defendant must meet each of the aforementioned requirements in order to be barred from safety-valve relief. That is, a criminal defendant must have more than four criminal history points, a prior three-point offense, *and* a prior two-point violent offense to be safety-valve ineligible. Here, it is undisputed that Manzon meets the first two requirements: he has sixteen criminal history points and multiple prior three-point offenses. Dkt. 32, ¶¶ 35, 39, 42, 44, 48. The dispute is thus whether Manzon's prior three-point aggravated battery conviction constitutes a "violent offense." *Lopez*, 998 F.3d at 440. Notably, if the Court finds aggravated battery qualifies as a "violent offense," Manzon's prior aggravated battery conviction can constitute a prior "two-point violent offense" even

## II. BACKGROUND

On May 10, 2022, Manzon was indicted with one count of Distribution of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), which carries a mandatory minimum sentence of ten years.[2] Dkt. 1. On September 15, 2022, Manzon entered a guilty plea to Count One of the single-count Indictment without the benefit of a plea agreement. Dkt. 28.

United States Probation ("Probation") subsequently prepared a Presentence Investigation Report ("PSR"). In the Initial PSR, Probation determined Manzon is safety valve eligible under *Lopez*. Dkt. 32, ¶ 14, 64, 86. To preserve its standing objection that *Lopez* was wrongly decided, the Government objected to the Initial PSR, arguing 18 U.S.C. § 3551(f)(1)'s requirements, when properly interpreted, are disjunctive and that the Ninth Circuit or Supreme Court will eventually so hold. Dkt. 36, at 2. The Government argued application of the correct interpretation of *Lopez* would bar Manzon from safety-valve eligibility because he has more than four criminal history points. The Government's contention that *Lopez* was wrongly decided is not currently at issue.[3]

---

though it carries a value of three criminal history points due to the longevity of the sentence (15 years). Under *Lopez*, a three-point violent offense can concurrently satisfy the requirements for both a prior three-point offense and a prior two-point violent offense. *Lopez*, 998 F.3d at 440 (explaining a three-point violent offense can simultaneously satisfy the requirements that a criminal defendant have both a "prior 3-point offense" and a "prior 2-point violent offense"). Manzon does not presently dispute this. Dkt. 37, at 3 (arguing that regardless of whether a three-point violent offense can simultaneously satisfy the three-point and two-point prerequisites, Manzon still qualifies for safety valve relief because aggravated battery is not a violent offense under Idaho law).

[2] The Indictment also contained a Drug Forfeiture Allegation covering any and all property used to commit, or derived from, the commission of the offense. Dkt. 1, at 2.

[3] Although a petition for rehearing is pending in *Lopez*, it has yet to be overruled or revised, and thus remains the governing law of this circuit. *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n. 2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it.").

In addition to challenging the Ninth Circuit's interpretation of 18 U.S.C. § 3551(f)(1) in *Lopez*, the Government also argued Probation's application of the safety-valve was erroneous, even under *Lopez*, because Manzon's prior three-point offense, aggravated battery, constitutes a prior two-point violent offense. *Id*. at 2; *See, supra*, text accompanying note 1. Manzon responded to the Government's objection, arguing Manzon's aggravated battery conviction does not qualify as a crime of violence under U.S.S.G. § 4B1.2. Dkt. 37, at 3–5.

After the Government replied to its objection to the Initial PSR, Dkt. 42, Probation determined aggravated battery does not constitute a federal crime of violence due to the overbreadth of Idaho's aggravated battery statute and did not amend the Initial PSR. Dkt. 43-1. Probation filed its Final PSR on February 28, 2023. Dkt. 43. In its concurrent Sentencing Recommendation, Probation explained Manzon is safety-valve eligible under *Lopez* and is thus relieved from the ten-year mandatory minimum penalty associated with 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Dkt. 44, at 1.

Given the similarity between the "crime of violence" issue in this case and that in another of this Court's cases then on appeal, *United States v. Vega*, 2022 WL 8238891 (D. Idaho 2022) ("*Vega I*") the parties later agreed to continue Manzon's sentencing until the Ninth Circuit issued its decision in *Vega*. Dkt. 48. On July 31, 2023, the Ninth Circuit affirmed, in an unpublished decision, this Court's holding that Vega's prior conviction for Idaho felony domestic battery with traumatic injury is not categorically a crime of violence under the Sentencing Guidelines. *United States v. Vega*, 2023 WL 4858148 (9th Cir. 2023) ("*Vega II*"). The Court subsequently ordered the parties in this case to submit supplemental

briefs regarding whether violation of Idaho's aggravated battery statute constitutes a "crime of violence" under the Sentencing Guidelines. Dkt. 49. The parties did so on August 31, 2023. Dkt. 51; Dkt. 52.

In preparation for Manzon's sentencing, the Court has reviewed the supplemental briefing, and issues the instant Decision.

### III. LEGAL STANDARD

The operative definition of "crime of violence" is set forth in U.S.S.G. § 4B1.2(a)(1),[4] which is known as the "elements" clause.[5] *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021). The elements clause defines a crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1). To determine whether a defendant's prior conviction qualifies as a crime of violence as defined in § 4B1.2(a)(1), courts apply the "categorical approach" outlined in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990).[6] "Under this categorical approach, if the state statute of conviction criminalizes more conduct than the federal generic offense, then the state offense is not categorically included

---

[4] The "enumerated offense clause," § 4B1.2(a)(2), is not at issue because Manzon's prior conviction is not one of the enumerated offenses listed in § 4B1.2(a)(2).

[5] The "elements" clause is also known as the "force" clause. *United States v. Door*, 917 F.3d 1146, 1150 (9th Cir. 2019). The Court uses the term "elements" clause herein.

[6] While *Taylor*, and many of the cases cited herein, were decided in the context of the Armed Career Criminal Act ("ACCA") and interpret the definition of a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i), that definition uses the same language as the definition "crime of violence" under U.S.S.G. § 4B1.2(a)(1). The Ninth Circuit makes "no distinction between the terms 'violent felony' as defined in the ACCA and 'crime of violence' as defined in section 4B1.2(a)(2) of the Sentencing Guidelines[.]" *United States v. Spencer*, 724 F.3d 1133, 1138 (9th Cir. 2013).

in the definition of the federal generic offense." *Rodriquez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) (cleaned up). "If the state statute of conviction criminalizes the same conduct or less conduct than the federal generic offense, then it qualifies as a generic federal offense." *United States v. Perez*, 932 F.3d 782, 784–85 (9th Cir. 2019) (citing *Barragan-Lopez v. Holder*, 705 F.3d 1112, 1115 (9th Cir. 2013)).

The United States Supreme Court has emphasized the "key" to the categorical comparison is only the "statutory definitions—i.e., the elements—of a defendant's prior offense[]" and *not* "the particular facts underlying" the defendant's prior conviction. *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor*, 495 U.S. at 600). Under the categorical approach, a court must presume a defendant's prior conviction "rested upon nothing more than the least of the acts criminalized" under his state statute of conviction. *United States v. Baldon*, 956 F.3d 1115, 1125 (9th Cir. 2020) (cleaned up) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–191 (2013)).

"Some statutes, however, have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder." *Mathis v. United States*, 579 U.S. 500, 505 (2016). When a prior conviction is for violating a "divisible statute"—that is, if the statute "lists alternative sets of elements, in essence several different crimes"—a court may employ the "modified categorical approach." *United States v. Werle*, 815 F.3d 614, 619 (9th Cir. 2016). Under the modified categorial approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 579 U.S. at 505–06. After determining which of the listed alternative

elements was integral to a defendant's conviction, "the sentencing court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.*

## IV. ANALYSIS

Here, the Government does not maintain Idaho's aggravated battery statute, Idaho Code § 18-907, categorically qualifies as a crime of violence.[7] Instead, the Government argues Idaho's aggravated battery statute is divisible, and that the subsection under which Manzon was convicted (Idaho code section § 18-907(a))[8] qualifies as a "crime of violence" under § 4B1.2(a)(1). To determine whether to apply the categorical or modified categorical approach, the Court must thus first determine whether Idaho Code § 18-907 is divisible.

### A. Divisibility

The Government argues Manzon's prior statute of conviction is divisible because:

> [T]he charging documents from Manzon's prior conviction, the Jury Instructions, and the Judgment of Conviction demonstrate the State divided the aggravated battery statute into multiple subsections setting forth different elements by which the crime may be committed and charged Manzon with violating Subsection (a) of Idaho Code § 18-907, which requires 'great bodily harm' to a person.

Dkt. 42, at 3.

---

[7] Manzon argues Idaho Code § 18-907 is not a categorical crime of violence because subsection (e) of the statute prohibits "causing great bodily harm, permanent disability or permanent disfigurement to an embryo or fetus." Idaho Code § 18-907(e). To qualify as a crime of violence, however, an offense must require proof that the defendant committed a violent act against a "person," U.S.S.G. § 4B1.2(a)(1), a term which federal courts define as a "member of the species homo sapiens who is born alive." *United States v. Adams*, 40 F.4th 1162, 1169 (10th Cir. 2022) (cleaned up). While it "takes no position on the issue of whether a fetus or embryo is a 'person,'" the Government concedes that Idaho Code § 18-907 is not categorically a crime of violence. Dkt. 42, at 2; Dkt. 51, at 3.

[8] Counts I and II of Manzon's prior aggravated battery conviction were charged under Idaho Code § 18-907(a), and Count III was charged under both § 18-907(a) and (b). Dkt. 51, at 6 n. 3.

The Government's argument puts the proverbial cart before the horse, as the Court cannot review the charging documents, Jury Instructions, or Judgment of Conviction from Manzon's prior conviction without *first* finding Idaho's aggravated battery statute is itself divisible. That Manzon may have been charged with, and convicted of, violating a specific subsection (or subsections) of Idaho code § 18-907 is irrelevant if such subsections provide various factual means of committing a single element, rather than alternative elements defining multiple crimes.[9] *Mathis*, 579 U.S. at 505–06, 516 (explaining "a court may not look behind the elements of a generally drafted statute to identify the means by which a defendant committed a crime") (citing *Descamps*, 570 U.S. at 258). "If a statute does not list alternative elements, but merely encompasses different means of committing an offense, the statute is 'indivisible' and the modified categorical approach 'has no role to play.'" *Lopez-Valencia v. Lynch*, 798 F.3d 863, 868 (9th Cir. 2015) (quoting *Descamps*, 570 U.S. at 264).

The Court thus begins with Idaho's aggravated battery statute. Idaho Code § 18-907 provides, in relevant part:

> (1) A person commits aggravated battery who, in committing battery:
>
> > (a) Causes great bodily harm, permanent disability or permanent disfigurement; or
> >
> > (b) Uses a deadly weapon or instrument; or

---

[9] If the state law fails to provide clear answers with respect to which listed items must be charged (and so are elements) and which need not be (and so are means), a court may take a "peek at the record documents" for "the sole and limited purpose determining whether the listed items are elements of the offense." *Mathis*, 579 U.S. at 518 (cleaned up). Only if the listed items are elements of the offense may the court make further use of the record materials. *Id.* If the listed items are instead means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.* at 517.

(c) Uses any vitriol, corrosive acid, or caustic chemical of any nature; or

(d) Uses any poison or noxious or destructive substance or liquid; or

(e) Upon the person of a pregnant female, causes great bodily harm, permanent disability or permanent disability to an embryo or fetus.

To answer the threshold means versus element inquiry, the Court may consider "authoritative sources of state law," such as state court decisions and state statutes. *Mathis*, 579 U.S. at 518. Idaho caselaw and statutes illustrate Idaho Code § 18-907 is indivisible.

"Idaho law requires a trial court to instruct a jury that, in order to convict a defendant, it must unanimously agree on the defendant's guilt." *State v. Southwick*, 345 P.3d 232, 240 (Idaho Ct. App. 2014) (citing Idaho Const. art. I, § 7; Idaho Code §§ 19–2316 and 19–2317; *State v. Adamcik*, 272 P.3d 417, 446 (Idaho 2012); *State v. Severson*, 215 P.3d 414, 431 (Idaho 2008)). "An instruction that the jury must unanimously agree on the facts giving rise to the offense, however, is generally not required." *Severson*, 215 P.3d at 431.

The only time an unanimity instruction—beyond the basic instruction that all must agree on the defendant's guilt—must be given is "when the defendant commits several acts, each of which would independently support a conviction for the crime charged." *Id*. That is, when there is evidence of "separate incident[s]"— [] "distinct union[s] of mens rea and actus reus separated by a discrete period of time and circumstance from any other such similar incident"—then a defendant will be "entitled to have the jury instructed that it must agree on a single incident in order to find him guilty." *Id*. at 431–32. Otherwise, "in cases involving alternative means of meeting statutory elements, the jury need only agree upon

the bottom line." *Southwick*, 345 P.3d at 240.

Notably, the Idaho Court of Appeals has specifically held aggravated battery can "be established by various methods" and thus, that "no unanimity instruction [is] necessary." *State v. Baker*, 385 P.3d 467, 475 (Idaho Ct. App. 2016); *see also State v. Richmond*, 2014 WL 4345808, at *6 (Idaho Ct. App. Sept. 2, 2014) (unpublished) (finding trial court did not err by failing to provide unanimity instruction for aggravated assault[10] despite defendant's distinct acts involving different types of force). Although the defendant in *Richmond* caused great bodily harm by punching the victim in the face, and used a deadly weapon or instrument (a seatbelt) to strangle the victim, the court held "Richmond's punching, choking, *or both* of the victim was committed during a course of conduct and was chargeable as one offense. Thus, an unanimity instruction was not required." *Id*. at *7 (emphasis added).

In *Rendon v. Holder*, the Ninth Circuit explained divisibility hinges on whether the state court jury must unanimously agree on the particular offense of which the defendant was convicted. 764 F.3d 1077, 1085 (9th Cir. 2014). By contrast, a statute is indivisible if "the jury may disagree" on the fact at issue "yet still convict." *Id.* at 1086; *United States v. Robinson*, 869 F.3d 933, 938 (9th Cir. 2017) (explaining if "a jury must unanimously agree on which of the . . .  statutory alternatives a defendant committed to return a conviction," the alternatives are elements; otherwise, they are means).

---

[10] Like aggravated battery, aggravated assault includes an assault with a deadly weapon, or by force likely to produce great bodily injury, or with any vitriol, corrosive acid, or caustic element of any kind. Idaho Code § 18-905. As such, the *Richmond* court's holding that the jury need not agree on the specific method the defendant used to find him guilty of aggravated assault applies with equal force to Idaho Code § 18-907.

Significantly, *Baker* and *Richmond* illustrate an Idaho jury can convict a defendant of aggravated assault without unanimously agreeing on the listed alternative methods the defendant used to commit the crime. *Baker*, 385 P.3d at 474; *Richmond*, 2014 WL 4345808, at *7; *see also Clark v. Paskett*, 972 F.2d 1338 (9th Cir. 1992) (unpublished) (finding the nature of the injuries constituting great bodily harm and the specific weapon used to inflict great bodily harm are not necessary elements of Idaho aggravated battery); *State v. McKeehan*, 430 P.2d 886, 893 (Idaho 1967) (explaining "grievous bodily injury,"[11] and not the exact nature of the injuries inflicted, constitutes the "aggravated" component of battery").[12] Where, as here, state court decisions answer the question of whether statutory alternatives are means or elements, the Court "need only follow what it says." *Mathis*, 579 U.S. at 518.

In sum, because Idaho aggravated battery is an offense that sets forth alternative means of establishing the offense for which the jury need not agree, the statute is not divisible, and the modified categorical approach is inapplicable. And, because the Government "can only concede that, taken together as a whole statute (incorporating any of the subsections of Idaho Code § 18-907) is not categorically a crime of violence," Manzon's prior conviction for aggravated battery does not constitute a violent offense. Dkt.

---

[11] When *McKeehan* was decided, the aggravated battery statute, codified at Idaho Code § 18-912, referred to "grievous bodily harm." During a subsequent recodification, the word "grievous" was replaced by "great." In *State v. Clark*, the Idaho Court of Appeals extended McKeehan's holding to the current version of Idaho Code § 18-907. 772 P.2d 263, 265 (Idaho Ct. App. 1989).

[12] Further, as Manzon highlights, a course of conduct that simultaneously caused great bodily injury to both a person and an embryo or fetus would be an indivisible act of aggravated battery, and the jury would not have to unanimously decide whether the defendant violated subsection (a), subsection (e), or both. Dkt. 52, at 10.

52, at 10.

**B. Modified Categorical Approach**

Further, as the Ninth Circuit held in *Vega II*, 2023 WL 4858148, at *1, even if Idaho Code § 18-907 could be considered divisible, Manzon's aggravated battery conviction is overbroad because he could commit this crime through an unlawful touching that happened to cause great bodily harm—and he could be found guilty of aggravated battery even though he lacked awareness that the touching would cause great bodily harm.

Assuming divisibility, Manzon was convicted of committing aggravated battery by violating Idaho Code § 18-907(1)(a). This code section provides that "[a] person commits aggravated battery who, in committing battery . . . [c]auses great bodily harm, permanent disability or permanent disfigurement." *Id*. Thus, to commit aggravated battery, a person must: (1) commit a battery and, thereby, (2) cause great bodily harm.

Battery, in its least-culpable subsection, is defined as any "[a]ctual, intentional and unlawful touching or striking of another person against the will of the other." Idaho Code § 18-903(b). However, Idaho law is clear that the intent involved in battery does not also apply to the causation of great bodily harm. As the Idaho Supreme Court held in *State v. Carver*, "the crime of aggravated battery does not require *any* intent to cause great bodily harm." 314 P.3d 171, 176 (Idaho 2013) (emphasis added). Instead, "[a] battery becomes an aggravated battery because of the harm caused, not because of the intent to cause that harm." *Id*. Thus, Manzon's specific prior conviction required an intentional "unlawful

touching" that caused "great bodily harm." Idaho Code § 18-903(b),[13] § 18-907(1)(a).

For the reasons set forth by this Court in *Vega I*, 2022 WL 823891, at *3–5, and affirmed by the Ninth Circuit in *Vega II*, 2023 WL 4858148, at 1–2, Idaho Code § 18-907(1)(a) does not constitute a federal crime of violence because it does not require "at least some awareness that the use of force will cause harm." *Vega II*, 2023 WL 4858148, at *1. Instead, a person can be convicted of aggravated battery in Idaho if he or she (1) has the mens rea required for misdemeanor battery and (2) happens to inflict great bodily harm. *State v. Macias*, 129 P.3d 1258, 1260 (Idaho Ct. App. 2005) (affirming defendant's aggravated battery conviction where defendant made physical contact with the victim, believing it necessary to block the victim's blow, and, in doing, so, caused significant bodily harm). Intent to cause great bodily harm is not required. *Carver*, 314 P.3d at 176; *White v. Univ. of Idaho*, 797 P.2d 108, 109 (Idaho 1990) (affirming lower court ruling that "under Idaho law the intent required for the commission of a battery is simply the intent to cause an unpermitted contact and not an intent that the contact be harmful or offensive.").

By contrast, the Supreme Court's decision in *Borden* established an offense cannot qualify as a federal crime of violence unless a conviction necessarily requires that, when the defendant acted, he made a "deliberate choice [to use force] with full awareness of [the] consequent harm." *Borden*, 141 S. Ct. at 1824, *id*. at 1835 (Thomas, J., concurring in judgment) (agreeing with the plurality that the elements clause only captures conduct

---

[13] Idaho code § 18-903(b) is the least culpable subsection of battery. Even applying the modified categorical approach, a court must consider whether the defendant's specific state statute of conviction criminalizes more conduct than U.S.S.G. § 4B1.2(a)(1). *Mathis*, 579 U.S. at 506. If any—even the least culpable—of the acts criminalized do not entail the type of force required under U.S.S.G. § 4B1.2(a)(1), the specific state statute of conviction does not constitute a crime of violence. *Borden*, 141 S. Ct. at 1822.

"designed to cause harm" to another). The *Borden* Court held the elements clause does not reach the individual who intentionally engages in forceful conduct when he does so merely in conscious disregard of "a substantial and unjustifiable" risk that his conduct will result in harm to another. *Id*. at 1824–25 (cleaned up).

Instead, the elements clause requires proof that when a defendant acted, he "not only [engaged in] a substantial degree of force," but that his use of force evidenced "a deliberate choice of wreaking harm on another, rather than mere indifference to risk." *Id*. at 1830. An individual who does not intend the harm resulting from his conduct, but rather "pay[s] insufficient attention to the potential application of force" has not engaged in conduct that is "opposed to or directed at another in the targeted way [the elements clause] requires." *Id*. at 1827.

As noted, in *Vega*, the Ninth Circuit affirmed this Court's holding that domestic battery with traumatic injury, Idaho Code § 18-918, is not a crime of violence because it does not require awareness that the use of force will cause harm. *Vega II*, 2023 WL 4858148, at *1. In so holding, the Ninth Circuit found that "[r]unning through *Borden* . . . is the assumption that someone who commits a violent felony possesses some awareness that their action will harm another." *Id*. at *2. Notably, like Idaho Code § 18-907(a), Idaho Code § 18-918 is a result-oriented addition to simple battery. Both statutes create enhanced sentences for certain outcomes—respectively "great bodily harm" or "traumatic injury"— but the only conduct they require is a simple battery. Neither statute requires any additional awareness of the consequent harm. *Vega*, 2023 WL 4858148, at *1; *Carver*, 314 P.3d at 176. This, in turn, means the mens rea of § 18-907(a) is overbroad, because to be guilty of

aggravated battery under this subsection does not require a showing that the accused purposely caused great bodily harm. *Borden*, 141 S. Ct. at 1830 (discussing how violent felonies are "crimes[] best understood to involve not only a substantial degree of force, but also a purposeful or knowing mental state—*a deliberate choice of wreaking harm on another*, rather than a mere indifference to risk") (emphasis added).[14]

In short, even if Idaho's aggravated battery statute was divisible, Manzon's conviction of § 18-907(a) does not constitute a crime of violence under U.S.S.G. § 4B1.2(a)(1).

## V. CONCLUSION

For the foregoing reasons, the Court finds Manzon's underlying aggravated battery conviction is not a crime of violence under § 4B1.2(a)(1). Accordingly, Manzon is eligible for safety valve relief. *Lopez*, 998 F.3d at 440. Although Manzon has more than four criminal history points and multiple prior three-point convictions, his prior three-point aggravated battery conviction does not constitute a violent offense.

DATED: November 8, 2023

_____

David C. Nye
Chief U.S. District Court Judge

---

[14] As Manzon notes, no legal imagination is required to conclude that Idaho Code § 18-907(a) does not require that the defendant acted with awareness of consequent harm. Dkt. 52, at 9 n. 3 (citing *Vega*, 2023 WL 858148, at *2). The same example that persuaded the Ninth Circuit that domestic battery with traumatic injury does not require that the defendant acted with awareness of consequent harm applies equally to aggravated battery: a person who willfully splashes another with fluid (as constitutes a battery pursuant to *State v. Nuse*, 409 P.3d 842, 844 (Idaho Ct. App. 2017), causing them to fall over backward and break their wrist, has committed aggravated battery. There is no requirement of proof that the person acted with any awareness of resulting harm.